IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Maria Camila Torres**,** | ) | Case No: 9:20-cv-03192-DCN-MGB |
| | ) | |
| Plaintiff, | ) | **FAMILY MEDICAL LEAVE ACT** |
| | ) | **(FMLA) AND FAMILIES FIRST** |
| vs. | ) | **CORONAVIRUS RESPONSE ACT** |
| | ) | **(FFCRA) COMPLAINT** |
| Life Care Services, LLC, | ) | **(JURY TRIAL REQUESTED)** |
| | ) | |
| Defendant. | ) | |
| | ) | |

NOW COMES Plaintiff Maria Camila Torres, complaining of Defendant Life Care Services, LLC and alleges as follows:

## **PARTIES AND JURISDICTION**

1. Plaintiff is a resident of Beaufort County.

2. Defendant Life Care Services, LLC operates an assisted living facility in Beaufort County called The Bayshore on Hilton Head Island ("Defendant Employer") and maintains offices and conducts business in Beaufort County.

3. Plaintiff was employed by Defendant Employer as the Lead Housekeeper for approximately three and a half (3 1/2) years.

4. All actions pertinent to the allegations in this Complaint took place in the Beaufort Division of the South Carolina District Court.

5. Jurisdiction and venue is proper in this Court.

## **FACTS**

6. Plaintiff worked for Defendant Employer more than twelve (12) months and more than 1250 hours during the twelve months that preceded her notification to Defendant Employer

1

that she would require Family Medical Leave Act maternity leave after the birth of her child at the end of November 2020.

7. Plaintiff is an "eligible employee" as that term is defined in the Family Medical Leave Act (FMLA).

8. Defendant Employer employs more than fifty (50) employees in the Beaufort area and offers its employees FMLA leave.

9. Plaintiff has received promotions and good evaluations throughout her employment with Defendant Employer. Her performance was excellent the entire time she worked at the Bayshore.

10. Although Plaintiff supervised a house keeping staff and her job did not routinely require her to lift heavy objects, after she was required to perform her staff's job duties do to understaffing, which duties included heavy lifting, Plaintiff developed a repetitive back injury that she was treated for in October of 2019.

11. During December 2019, Plaintiff was still experiencing back pain so when she visited her family in Colombia, she received medical treatment and x-rays for her back because she had insurance through her family in Colombia whereas she had none through Defendant Employer.

12. Plaintiff was told by a back doctor in Colombia that she had a repetitive back injury due to her lifting and twisting at work over the past few years and she would eventually need surgery.

13. Plaintiff reported this back injury to Defendant Employer when she returned to work in January 2020, but Defendant did not file a First Report of Injury and her complaints about a back injury were never investigated.

14. Plaintiff's supervisor at the time assured Plaintiff that she no longer had to pick up heavy objects and she could work light duty. Plaintiff was also permitted to wear a back brace.

15. Plaintiff missed no work as a result of her on the job back injury in October of 2019 and she continued to work light duty though she was in pain.

16. Plaintiff became pregnant in February 2020.

17. Defendant Employer knew Plaintiff was pregnant and that Plaintiff planned to take FMLA leave in late November.

18. In June, 2020, Plaintiff was exposed to Covid-19 and as she was four (4) months pregnant, Defendant Employer told Plaintiff to quarantine until she received the results her Covid-19 test.

19. Rather than follow the requirements of the Families First Coronavirus Response Act (FFCRA), and provide Plaintiff paid emergency sick leave while she was quarantined, Defendant Employer required Plaintiff to use all of her vacation leave while she was quarantining.

20. Plaintiff had planned on using her vacation leave in November when her child was born so some of her FMLA leave would be paid leave.

21. Plaintiff returned to work after quarantining in June and worked without incident until early August of 2020.

22. In August of 2020, Plaintiff slipped and fell at work while walking from a wet carpet to a wet tile floor and she reported this accident to Defendant Employer. Plaintiff's injury was a minor muscle strain to her stomach.

23. Plaintiff refused to seek medical treatment at a hospital for the muscle strain because she was pregnant and she did not want to risk going to a hospital during Covid-19.

24. Although Plaintiff missed no work after this second on the job injury, Defendant Employer filled out a First Report of Injury and then unilaterally made the decision to place Plaintiff on FMLA leave.

25. Placing Plaintiff on forced FMLA leave when she had no serious medical illness ensured that Plaintiff, whose due date is November 24, 2020, would end her twelve (12) weeks of FMLA protected leave on October 29, 2020 which is about one (1) a month before the birth of her child.

26. Plaintiff knew if she was forced to take FMLA leave, she could be terminated before her son was born.

27. Plaintiff assured Defendant Employer she could work and that she had no serious medical illness.

28. Plaintiff refused to sign the FMLA documentation presented to her.

29. Plaintiff's back doctor never reported she had a serious medical illness. Plaintiff's back doctor only reported that Plaintiff should not lift heavy objects in October of 2019 and his recommendation was honored by Defendant Employer until August of 2020.

30. No doctor ever reported Plaintiff had a serious medical condition or that she could not work.

31. Defendant Employer claims Plaintiff has not been terminated, but Plaintiff has no income and can now be terminated after twelve (12) weeks of FMLA leave, one month before she gives birth.

32. Plaintiff is attempting to obtain work as she has no income but as she is now seven (7) months pregnant and it is difficult for her to find employment, especially during Covid.

33. When Plaintiff went to the Bayshore to sign some papers after she was involuntarily placed on FMLA leave, her supervisor Michael Votery and the Director of Activities both passed Plaintiff in the hall and refused to say hello or even acknowledge her. It is clear to Plaintiff that her co-workers have been told she would not be returning to work after her child is born.

**FIRST CAUSE OF ACTION**
**(FMLA Interference, 29 USC § 2615 (a) (1))**

34. Plaintiff hereby repeats and realleges each and every allegation above as fully as if set forth verbatim.

35. Plaintiff was entitled to FMLA leave after the birth of her child.

36. Plaintiff provided adequate notice to Defendant Employer of her need for FMLA leave at the end of November of 2020 when her child was due to be born.

37. Being pregnant is not a serious medical health condition absent incapacity or complications.

38. Defendant Employer wrongfully interfered with Plaintiff's right to take her FMLA leave when it was actually needed for the birth of her child and to return to her job after the expiration of her FMLA leave in violation of 29 USC § 2615 (a) (1) by involuntarily placing Plaintiff on leave in August 2020 when she had no serious medical illness. This action will result in Plaintiff not having FMLA leave when she actually needs it at the end of November, 2020.

39. Further, Defendant Employer's requirement that Plaintiff use her two (2) weeks' vacation leave when she was quarantined for exposure to Covid-19 in June, 2020 interfered with

5

Plaintiff's FMLA rights because two (2) weeks of Plaintiff's FMLA leave that should have been paid leave, is now unpaid leave.

40. Defendant Employer should not have required Plaintiff to use her vacation leave as under Section 5102 of the Families First Coronavirus Response Act (FFCRA), employees who are quarantined are entitled to eighty (80) hours of paid emergency sick leave.

41. Defendant interfered with Plaintiff's paid FMLA leave by requiring Plaintiff to use vacation leave that otherwise would have been available when she took FMLA leave in November of 2020.

42. Defendant's actions constitute actionable interference with Plaintiff's FMLA rights as Plaintiff had planned on only taking FMLA leave after the birth of her child and returning to work before that FMLA leave expired, as well as having at least two (2) weeks' FMLA leave.

43. Plaintiff is entitled to actual damages including lost back and future wages, forfeited employment benefits, liquidated damages, prejudgment and post judgment interest, costs and attorney fees.

<u>SECOND CAUSE OF ACTION</u>
**(Families First Coronavirus Response Act (FFCRA) violation)**

44. Plaintiff hereby repeats and realleges each and every allegation above as fully as if set forth verbatim.

45. Section 5102 of FFCRA requires an employer whose full-time employee has been advised by a health care provider to self-quarantine due to Covid-19 pay 80 hours of emergency sick leave.

46. Further, an employer may not require an employee to use other leave before paying the 80 hours of emergency sick leave.

47.     An employer who violates Section 5102 is considered to have violated the minimum wages requirements of Section 6 of the Fair Labor Standards Act (FLSA) and subject to penalties described in Sections 16 and 17 of the FLSA.

48.     Defendant Employer owes Plaintiff minimum wages for the two (2) weeks she was not paid, liquidated damages, attorney fees and costs for violating FFCRA.

Wherefore, Plaintiff respectfully requests this Court grant Plaintiff the damages requested herein, as well as such other relief the Court deems appropriate.

                  BLOODGOOD & SANDERS, LLC

                  <u>S/Nancy Bloodgood</u>
                  Nancy Bloodgood, Fed Bar No.: 5208
                  Lucy C. Sanders, Fed Bar No.: 10834
                  Mt. Pleasant, S.C. 29464
                  Telephone: (843) 972-0313
                  Email: nbloodgood@bloodgoodsanders.com
                           lsanders@bloodgoodsanders.com

                  *Attorneys for Plaintiff*

Charleston, South Carolina

Date: September 8, 2020